NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____

| | | |
|---|---|---|
| PETER L. CARATINI, | : | |
| | : | |
| Plaintiff | : | Civ. No. 20-8924 (RMB-SAK) |
| | : | |
| v. | : | |
| | : | **OPINION** |
| ADMINISTRATOR JOHN POWELL | : | |
| *et al.*, | : | |
| | : | |
| Defendants | : | |

_____:

BUMB, District Judge

Plaintiff Peter L. Caratini, a prisoner confined in South Woods State Prison ("SWSP") in Bridgeton, New Jersey, filed this civil rights action in the United States District Court, Eastern District of Pennsylvania on June 15, 2020. (Compl., Dkt. No. 2.) Venue was transferred to this Court on June 25, 2020. (Transfer Order, Dkt. No. 4.) This Court administratively terminated the matter because Plaintiff failed to pay the filing fee or submit an application to proceed *in forma pauperis* under 28 U.S.C. § 1915(a). (Orders, Dkt. Nos. 7. 9.) On November 2, 2020, Plaintiff submitted an amended complaint. (Am. Compl., Dkt. No. 11.) On May 4, 2021, the Court received the filing fee from Plaintiff and will now reopen this matter.

I.    *Sua Sponte* Dismissal

When a prisoner pays the filing fee for a civil action regarding prison conditions and seeks redress from a governmental entity, officer or employee of a governmental entity, 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c) require courts to review the complaint and *sua sponte* dismiss any claims that are (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief.

Courts must liberally construe pleadings that are filed *pro se*. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Thus, "a *pro se* complaint, however inartfully pleaded, must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Id. (internal quotation marks omitted). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556.) Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. Id.

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. If a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice but must permit the amendment. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

II. DISCUSSION

    A.    The Amended Complaint

In a lengthy amended complaint against twenty-four defendants, Plaintiff raises claims against prison officials and employees at SWSP and Northern State Prison ("NSP") concerning unsanitary and other allegedly cruel and unusual conditions of confinement, destruction of property, tampering with mail, inadequate medical care, religious discrimination, retaliation, and falsified disciplinary infractions. Many of the incidents alleged in the amended complaint occurred in the years 2016 through 2018, fewer occurred in 2019 and 2020. The original complaint is

dated June 10, 2020. (Compl., Dkt. No. 1.) For relief, Plaintiff seeks a preliminary injunction and damages. (Am. Compl., Dkt. No. 11 at 75.)

B.  Claims under 42 U.S.C. § 1983

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255–56 (3d Cir. 1994).

1.  *Statute of Limitations*

42 U.S.C. § 1983 "provides a federal cause of action for the violation of a federal right," but state law provides the statute of limitations for such claims. Dique v. New Jersey State Police, 603 F.3d 181, 185 (3d Cir. 2010) (citations omitted). A claim under

§ 1983 is governed by the applicable state's statute of limitations period for personal injury torts; in New Jersey it is two years. Id. (citing N.J. Stat. Ann. § 2A:14-2; Montgomery v. De Simone, 159 F.3d 120, 126 n. 4 (3d Cir. 1998)). The issue of whether the limitations period should be tolled is also governed by state law, but accrual of a claim is governed by federal law. Id. (citations omitted). The statute of limitations period begins to run, "when a plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." Id. (internal quotations omitted).

According to the prison mailbox rule,[1] Plaintiff filed his complaint on June 10, 2020, therefore, any claims that accrued prior to June 10, 2018 are barred by the statute of limitations, absent tolling. See McPherson v. United States, 392 F. App'x 938, 943 (3d Cir. 2010) ("when a statute-of-limitations defense is apparent from the face of the complaint, a court may *sua sponte* dismiss the complaint pursuant to 28 U.S.C. § 1915 or 28 U.S.C. § 1915A.") Plaintiff has not asserted any basis for equitable tolling. Therefore, the Court will dismiss with prejudice Plaintiff's claims arising out of incidents that, according to the

---

[1] See Moody v. Conroy, 680 F. App'x 140, 144 (3d Cir. 2017) ("a pleading is deemed filed at the time a prisoner executes it and delivers it to prison authorities for mailing." (citations omitted).

face of the complaint, occurred prior to June 10, 2018, Claim Nos.
2(7), (8), 3, 4, 5, 6, 7, 8, 9, 10, 16, 17, 18, 19, and 20.

      2.  *Eighth Amendment Conditions of Confinement Claims*

"It is undisputed that the treatment a prisoner receives in
prison and the conditions under which he is confined are subject
to scrutiny under the Eighth Amendment." <u>Helling v. McKinney</u>, 509
U.S. 25, 31 (1993)). "The Constitution 'does not mandate
comfortable prisons…." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994)
(quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 (1981)), but it
requires that prison officials provide "adequate food, clothing,
shelter, and medical care, and must 'take reasonable measures to
guarantee the safety of the inmates[.]'" <u>Id.</u> (quoting <u>Hudson v.</u>
<u>Palmer</u>, 468 U.S. 517, 526-527 (1984). To succeed on an Eighth
Amendment claim, a plaintiff must establish a defendant's
deliberate indifference to inmate health or safety. <u>Id.</u> at 834
(citations omitted).

> [A] prison official cannot be found liable
> under the Eighth Amendment for denying an
> inmate humane conditions of confinement unless
> the official knows of and disregards an
> excessive risk to inmate health or safety; the
> official must both be aware of facts from
> which the inference could be drawn that a
> substantial risk of serious harm exists, and
> he must also draw the inference. … [I]t is
> enough that the official acted or failed to
> act despite his knowledge of a substantial
> risk of serious harm.

<u>Id.</u> at 837, 42.

There is no vicarious liability under 42 U.S.C. § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.

> "[T]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne* Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir.2004) (second alteration in original).

Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010).

a. *Conditions of confinement claims against John Powell and Willie Bonds*

In Claim Nos. 1 and 2, Plaintiff alleges John Powell and Willie Bonds, Administrators of SWSP, are

> guilty of mandating his unlawful policies and directives in the institution of South Woods State Prison. That did in fact set the precedence for my Constitutional Rights Violations. Thus, being purposely responsible for the violations of my FIRST, FOURTEENTH & EIGHTH AMENDMENT CONSTITUTIONAL RIGHTS[.]

(Am. Compl. Dkt No. 11 at 6.) Plaintiff seeks to hold Powell and Bonds liable for the following incidents or prison conditions that occurred after June 10, 2018: (1) in April and May 2019 and August 4-6, 2020, the power went out in Plaintiff's housing unit, causing

a lack of ventilation or air conditioning, and Plaintiff suffered
carbon monoxide poisoning and brain asphyxia; (2) there was no
running water in SWSP for three days in August 2020; when the water
came back on, it was contaminated and many inmates suffered from
diarrhea; (3) during the years 2018 through 2020, third shift
officers repeatedly opened and slammed cell doors shut in the
middle of the night to disrupt inmates' sleep; (4) Plaintiff was
exposed to constant illumination, preventing him from sleeping;
(5) lack of maintenance on the ventilation system caused Plaintiff
major respiratory problems from air contaminants. (Am. Compl.,
Dkt. No. 11 at 17-25.)

Plaintiff failed to allege any specific policies or customs
created by Powell or Bonds that caused these conditions to occur.
See Brown v. Delaware Cty. Prison Bd. of Inspectors, 741 F. App'x
135, 138 (3d Cir. 2018) (finding the court "correctly dismissed
the claims against CEC and the Board of Inspectors as [the
plaintiff] failed to allege any constitutional violation
attributable to these defendants' customs or policies") (citing
Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). Further,
none of the conditions, as alleged, are sufficient to pose an
excessive risk to inmate health or safety. See Fantone v. Herbik,
528 F. App'x 123, 127-28 (3d Cir. 2013) (finding prisoner failed
to allege his health and safety were at risk). Specifically, the
Court finds it implausible that that lack of ventilation, without

more, during April and May 2019 and several days in August 2020, caused Plaintiff to suffer carbon monoxide poisoning and brain asphyxia. See Iqbal, 556 U.S. at 678 (claim must be plausible to survive motion to dismiss). Plaintiff's claim of constant illumination is not specific enough for the Court to conclude that illumination posed a serious risk to his health. Cf., Mammana v. Fed. Bureau of Prisons, 934 F.3d 368, 374 (3d Cir. 2019) (bright, constant illumination that causes grave sleeping problems and other mental and psychological problems can establish an Eighth Amendment deprivation) (internal quotations omitted); see also Collier v. Adams, 602 F. App'x 850, 852 (3d Cir. 2015) (where prisoner had access to drinking water, but water to his cell was shut off for 77 hours, the conditions did not amount to an Eighth Amendment violation (citation omitted); Duran v. Merline, 923 F. Supp. 2d 702, 720 (D.N.J. 2013) ("isolated instances of contaminated or spoiled food, while certainly unpleasant, are not unconstitutional").  The Court will dismiss these claims without prejudice to Plaintiff amending the complaint, if he can allege additional facts that support a claim for relief.

        b.   *Conditions of confinement claims against Jillian Tanner*

In Claim No. 14, for the years of 2018-2020,[2] Plaintiff seeks to hold Jillian Tanner, dietician for SWSP, liable for allowing the "main kitchen" at SWSP to substitute processed food for his "renal medical dietary meals," serving child-sized portions that were not sufficient to sustain an adult, serving cold food, serving food that contained foreign objects, serving unhealthy food, and depriving him of medically prescribed meals on Jewish holidays when he received "Jewish religious meal feasts." (Am. Compl., Claim No. 14, Dkt. No. 11 at 65.)

Plaintiff has not alleged that Tanner had knowledge of and acquiesced in the alleged unconstitutional conditions or that Tanner instituted a policy or custom that caused the conditions. See Ledcke v. Pennsylvania Dep't of Corr., 655 F. App'x 886, 889 (3d Cir. 2016) ("The District Court … properly dismissed … claims of supervisory liability because [the plaintiff] failed to demonstrate that any of the supervisory Defendants were actually involved in the alleged unconstitutional conduct, or that they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" (quoting Santiago 629 F.3d at 129 n.5.)) Therefore, Plaintiff has failed to state an Eighth Amendment claim against Tanner.

---

[2] Claims against Tanner based on acts in 2017 are dismissed with prejudice as barred by the two-year statute of limitations.

3.  *RLUIPA and First Amendment free exercise
    of religion claims against John Powell
    and Willie Bonds*

In Claims 1 and 2, Plaintiff seeks to hold John Powell and
Wille Bonds liable for acts of religious discrimination directed
against Plaintiff on Jewish holidays, but he does not describe the
alleged misconduct, who committed the misconduct, or how Powell or
Bonds were deliberately indifferent to the misconduct.
Additionally, Plaintiff seeks to hold Powell and Bonds liable for
unknown persons stealing food items meant for Jewish holidays. The
Court construes the amended complaint as raising claims under the
Protection of Religious Exercise in Land Use and by
Institutionalized Persons Act ("RLUIPA"), 42 U.S.C.A. § 2000cc-2,
and the First Amendment Free Exercise Clause.

The provision of RLUIPA relevant here "provides that '[n]o
government shall impose a substantial burden on the religious
exercise of a person residing in or confined to an institution ...
even if the burden results from a rule of general applicability
unless the government demonstrates that imposition of the burden
on that person—(1) is in furtherance of a compelling governmental
interest; and (2) is the least restrictive means of furthering
that compelling governmental interest.' § 2000cc-1(a)." Holt v.
Hobbs, 574 U.S. 352, 357-58 (2015)).

Because his claims are so vague, Plaintiff has not alleged sufficient facts for the Court to conclude prison officials placed a substantial burden on his exercise of religion nor has he alleged that Powell and Bonds had knowledge of and acquiesced in such conduct or created a policy or custom that caused a substantial burden on Plaintiff's exercise of religion. Bare allegations of policies and customs are insufficient to state a claim of supervisory liability under 42 U.S.C. § 1983. See Phillips v. Northampton Co., P.A., 687 F. App'x 129, 132 (3d Cir. 2017) (finding wholly conclusory and highly generalized assertions about unspecified patterns of misconduct failed to allege existence of any policy, custom, or practice in support of § 1983 claim). Where Plaintiff has failed to state a claim under RLUIPA, he has also failed to allege a more demanding First Amendment free exercise of religion claim. See Robinson v. Superintendent Houtzdale SCI, 693 F. App'x 111, 117 (3d Cir. 2017) (quoting Cutter v. Wilkinson, 544 U.S. 709, 717 (2005)) ("RLUIPA is broader than the First Amendment and requires the 'compelling government interest' and 'least restrictive means' test of strict scrutiny[.])" Unlike § 1983, RLUIPA has a four-year statute of limitations. Id. at 116 (citing 28 U.S.C. § 1658 (2006)).

4.   *First   Amendment   retaliation   claims   against
     Administrators  Powell  and  Bonds  and  Sergeant  D.
     Cain*

In Claims 1 and 2, Plaintiff alleges Powell and Bonds did not

allow him to maintain, in his "Department of Corrections (IPIN)

Assignment Form," the phone numbers for federal and state agencies

where he could report abuses occurring in the prison. (Am. Compl.,

Dkt. No. 11 at 18-19.) The Court construes this as a First

Amendment retaliation claim.

> To state a prima facie case of First Amendment
> retaliation, a claimant must allege that (1)
> he engaged in constitutionally protected
> conduct; (2) he suffered an adverse action
> "sufficient to deter a person of ordinary
> firmness from exercising his [constitutional]
> rights"; and (3) the constitutionally
> protected conduct was "a substantial or
> motivating factor" for the adverse action.
> *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir.
> 2001) (alteration in original) (first quoting
> *Allah v. Seiverling*, 229 F.3d 220, 225 (3d
> Cir. 2000); and then quoting *Mt. Healthy City
> Sch. Dist. Bd. of Educ. V. Doyle*, 429 U.S.
> 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471
> (1977)).

Palmore v. Hornberger, 813 F. App'x 68, 70 (3d Cir. 2020).

The Court finds that the act of not allowing Plaintiff to

maintain phone numbers on a certain form, for his use in reporting

abuses to federal and state agencies, was not an adverse action

sufficient to support a retaliation claim, because Plaintiff has

not alleged that Powell, Bonds or any other prison employee

prevented him from contacting a federal or state agency to report

a violation of law or for any other reason. The Court will dismiss this claim without prejudice.

In Claim 24, Plaintiff alleges second-shift Sergeant D. Cain at SWSP conducted a search of Plaintiff's cell on January 25, 2020, in retaliation for Plaintiff filing this complaint.[3] (Am. Compl., Dkt. No. 11 at 72.) Plaintiff's property was thrown around his cell and his word processor was damaged. (Id.)

Plaintiff alleges the cell search was done in retaliation for Plaintiff filing this complaint, but the original complaint was filed in June 2020, and the search was conducted on January 25, 2020. Even if the Court assumes Plaintiff meant to allege the search was conducted in retaliation for filing a grievance concerning the issues alleged in this action, the complaint lacks sufficient information for the Court to conclude that filing a grievance was "a substantial or motivating factor" for the cell search. See e.g. Burton v. Giroux, 794 F. App'x 196, 198 (3d Cir. 2019) (affirming dismissal of claim where prisoner failed to allege a "reason to believe that his threat to file a complaint played

---

[3] Even if the Court construed this as a Fourth claim of an unreasonable search, as applied to the States by the Fourteenth Amendment, the claim would fail because "the Supreme Court has held, 'the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.'" Crosby v. Piazza, 465 F. App'x 168, 172 (3d Cir. 2012) (quoting Hudson v. Palmer, 468 U.S. 517, 526 (1984).

any role in [corrections officer's] decision to charge him with misconduct.")

       5.   *First Amendment interference with mail claims against Sergeant Dana Sheehan and Corrections Officer L. Vastano*

Plaintiff alleges, in Claim Nos. 11, 12, that Sergeant Dana Sheehan and Corrections Officer L. Vastano at SWSP impeded and obstructed his incoming and outgoing mail. (Am. Compl., Dkt. No. 11 at 63-64.) "The Supreme Court has recognized that prisoners have protected First Amendment interests in both sending and receiving mail." Caldwell v. Beard, 305 F. App'x 1, 4 (3d Cir. 2008) (citing Thornburgh v. Abbott, 490 U.S. 401 (1989); Turner v. Safley, 482 U.S. 78 (1987)). However, "the rights of prisoners 'must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration.'" Id. (quoting Thornburgh, 490 U.S. at 407 (quoting Turner, 482 U.S. at 85). Where the interference with a prisoner's nonprivileged mail "is reasonably related to the legitimate penological interest of institutional security," it does not violate the First Amendment. Id. at 4. Here, Plaintiff has not alleged how Sheehan and Vastano interfered with his incoming or outgoing mail. Because a prisoner's First Amendment interest in sending and receiving mail is not absolute, Plaintiff failed to plead sufficient facts to state a claim.

6. *Fourteenth Amendment deprivation of property claims against Sergeant Dana Sheehan, Corrections Officer L. Vastano and Sergeant D. Cain*

Plaintiff alleges in Claim No. 11 that Sergeant Dana Sheehan at SWSP confiscated his personal property that he had purchased in the commissary. (Am. Compl., Dkt. No. 11 at 63.) In Claim 24, Plaintiff alleges Sergeant D. Cain at SWSP damaged his word processor while searching Plaintiff's cell on January 25, 2020. (Am. Compl., Dkt. No. 11 at 72.) Although prisoners have a procedural due process interest in their property, the protection extends only so far that prisoners must be afforded a meaningful post-deprivation remedy. Cruz v. SCI-SMR Dietary Servs., 566 F. App'x 158, 160 (3d Cir. 2014) (citing Parratt v. Taylor, 451 U.S. 527, 537 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986); Hudson v. Palmer, 468 U.S. 517, 533 (1984). A prison's internal grievance system and the New Jersey Tort Claims Act may provide adequate post-deprivation remedies. See e.g., Ragland v. Comm'r New Jersey Dep't of Corr., 717 F. App'x 175, 178 (3d Cir. 2017). Plaintiff has not alleged that he was not provided an adequate post-deprivation remedy. Therefore, the Court will dismiss the Fourteenth Amendment due process claims without prejudice.

> 7. *First Amendment denial of access to the courts claims against David Metelow*

In Claim No. 15, Plaintiff alleges David Metelow, the Supervisor of Education at SWSP, obstructed Plaintiff's efforts to obtain supplies for his word processor, which he used to prepare legal documents, and denied Plaintiff access to the law library for six months. (Am. Compl., Dkt. No. 11 at 66.)

> Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an "actual injury"—that they lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that they have no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit. *See Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002).

Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008)). Plaintiff's allegations fall far short of meeting this standard, and the Court will dismiss his First Amendment access to courts claims without prejudice.

> 8. *Eighth Amendment inadequate medical care claims against Nurse Practitioner Lisa Renee Mills, Dr. Heshan Soliman, Dr. Sherita Collier, Ms. Williams Hall, and unnamed medical personnel at SWSP*

Plaintiff alleges, in Claim No. 13, that Nurse Practitioner Lisa Renee Mills was negligent by performing all of Plaintiff's physical examinations in thirty seconds, and ignoring his medical complaints and request for treatment. (Am. Compl., Dkt. No. 11 at

64.) Similarly, in Claim No. 23, Plaintiff alleges his new medical provider, Ms. Williams Hall, was negligent by failing to provide him with needed medication and medical treatment. (Am. Compl., Dkt. NO. 11 at 54.) "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under s 1983." Estelle v. Gamble, 429 U.S. 97, 105 (1976)). Allegations of negligence are insufficient; "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. Plaintiff has not described any of his medical conditions or how Ms. Mills or Ms. Williams Hall were deliberately indifferent, as opposed to negligent, in treating those conditions. Therefore, he fails to state an Eighth Amendment claim against Mills or Williams Hall.

In Claim Nos. 21 and 22, Plaintiff alleges Dr. Heshan Soliman and Dr. Sherita Collier failed to provide him adequate medical care. (Am. Compl., Dkt. No. 11 at 70-72.) Specific to Dr. Soliman, Plaintiff alleges he is the Director of Medical Services for the New Jersey Department of Corrections, and he failed to employ competent medical staff. (Id. at 70.) Plaintiff provides no specific examples and instead alleges generally that medical staff at SWSP go out of their way to deny treatment to inmates with major illnesses. (Id.) The Court construes this as a failure to train and supervise claim.

Section 1983 claims against supervisors for failure to train and supervise are subject to the same standard for municipal liability set forth in <u>Monell v. New York City Dept. of Social Services</u>;[4] "'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury ... the government as an entity is responsible under § 1983.'" <u>Carter v. City of Philadelphia</u>, 181 F.3d 339, 356–57 (3d Cir. 1999) (quoting Monell, 426 U.S. at 694). A plaintiff must plead a specific policy or custom that caused the plaintiff's constitutional injury. See <u>Barkes v. First Corr. Med., Inc.</u>, 766 F.3d 307, 319–20 (3d Cir. 2014), <u>cert. granted</u>, <u>judgment rev'd sub nom. Taylor v. Barkes</u>, 575 U.S. 822 (2015) ("[t]he essence of the type of claim we approved … is that a state official, by virtue of his or her own deliberate indifference to known deficiencies in a government policy or procedure, has allowed to develop an environment in which there is an unreasonable risk that a constitutional injury will occur, and that such an injury does occur.") Plaintiff has not described any *particular* training or supervisory act or omission by Dr. Soliman that caused Plaintiff to suffer a constitutional injury. Therefore, Plaintiff failed to state a claim against Dr. Soliman.

---

[4]  436 U.S. 658, 694 (1978).

Plaintiff alleges in Claim No. 22 that Dr. Sherita Collier, head doctor in SWSP, implemented policies and procedures that caused nurse practitioners to "down play" Plaintiff's medical conditions and to cut back on his treatment. Plaintiff has not described the policies and procedures implemented by Dr. Collier. Therefore, he fails to state a claim against her.

Also in Claim No. 23, Plaintiff alleges that unidentified medical personnel at SWSP "always ignored my multiple 'Medication Refill Request Forms….'" (Am. Compl., Dkt. No. 11 at 71.) Without more specific information about when Plaintiff submitted such forms, how long the forms were ignored, and whether Plaintiff ran out of his prescribed medications before they were refilled, the Court cannot determine whether any particular individual was deliberately indifferent to his serious medical need. The Court will dismiss this claim without prejudice.

*C.* <u>State Law Claims</u>

It is not clear from the amended complaint whether Plaintiff is attempting to assert negligence claims under New Jersey state law. Assuming that he is, the Court declines to exercise supplemental jurisdiction over such claims because the amended complaint fails to state a federal claim, and Plaintiff does not assert diversity jurisdiction. <u>See</u> 28 U.S.C. § 1367(c)(3).

D.    Request for Preliminary Injunction

Plaintiff has failed to allege sufficient facts to state a claim for relief under 42 U.S.C. § 1983. Therefore, he is not entitled to a temporary restraining order or preliminary injunctive relief under Federal Rule of Civil Procedure 65(a) at this time. See Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017), as amended (June 26, 2017) ("a movant for preliminary equitable relief must … demonstrate that it can win on the merits….")

III. CONCLUSION

For the reasons stated above, the Court will dismiss the amended complaint without prejudice.

An appropriate Order follows.

DATE:  **May 14, 2021**

                                        s/Renée Marie Bumb
                                        **RENÉE MARIE BUMB**
                                        **United States District Judge**