[Docket No. 98]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| PETER L. CARATINI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JOHN POWELL, in his individual capacity as Administrator of South Woods State Prison; WILLIE BONDS, in his individual capacity as Administrator of South Woods State Prison; LISA SWIFT, in her individual capacity; OLIVER KELLER, in his supervisory and individual capacities; P. SHEPPARD, in his individual capacity; J. KUHLEN, in his individual capacity; A. HERNANDEZ, in his individual capacity; R. SWEENEY, in his individual capacity; A. DOOLEY, in his individual capacity; NURSE PRACTITIONER LISA R. MILLS, in her individual capacity; DENTIST RICHARD DOE, in his individual capacity; JOHN DOES 1-25, in their individual capacities; and JANE DOES 1-10, in their individual capacities,<br><br>　　　　Defendants. | Civil No. 20-8924 (RMB-MSJ)<br><br>**OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge**

**THIS MATTER** comes before the Court upon Defendants Bonds, Dooley, Hernandez, Keller, Kuhlen, Powell, Sweeney, Swift, and Sheppard's ("Defendants") Motion to Dismiss Plaintiff Peter Caratini's ("Plaintiff") Fourth Amended Complaint. [Docket No. 98 ("Motion").] Plaintiff filed a brief in opposition to the Motion and Defendants filed a reply brief in further support of dismissal. Pursuant to Federal Rule

of Civil Procedure 78 and Local Civil Rule 78.1(b), the Court did not hear oral argument. For the reasons set forth below, the Court will **GRANT** the Motion, in part, **DISMISS** the Fourth Amended Complaint, in part, and **CONVERT** the Motion to one for summary judgment, in part.

## I. FACTUAL BACKGROUND

Plaintiff Peter Caratini ("Plaintiff") brings this civil rights action to remedy a host of federal and state constitutional violations he allegedly experienced while incarcerated at South Woods State Prison. [Docket No. 71, Fourth Amended Complaint ("4AC").] Relevant here, he has sued various (i) John Doe defendants; (ii) corrections officers (Defendants Sheppard, Kuhlen, Hunter, Hernandez, Sweeney, Dooley (the "Retaliation Defendants")); (iii) and prison administrators (Defendants Powell, Bonds, and Keller (the "Administrative Defendants")) for equal protection violations, retaliation claims, as well as excessive force and failure to protect claims.

### A. Equal Protection Claims

Plaintiff is Jewish. [4AC ¶ 31.] He alleges that certain John Doe correctional officers at South Woods State Prison subjected him and other Jewish prisoners to discriminatory treatment by requiring them to wait to be searched in an outdoor area outside the prison chapel before and after worship. [*Id.* ¶ 32.] He alleges that members of other religious groups, by contrast, did not have to wait outside and were searched in the prison chapel. [*Id.* ¶ 33.] Plaintiff alleges that the wait times were purposefully longer during periods of inclement weather. [*Id.* ¶ 34.] While waiting to be searched,

2

the John Doe officers would allegedly subject Plaintiff and other Jewish prisoners to antisemitic slurs. [*Id.* ¶ 33.] Plaintiff highlights three such instances in 2018 occurring on Passover, Rosh Hashanah, and Hanukkah. [*Id.* ¶¶ 36–49.] On each holiday, he alleges, the John Doe officers required Plaintiff and other Jewish prisoners to wait outside the chapel during heavy rain and frigid temperatures. Plaintiff alleges that he filed three inmate inquiry grievances regarding the Passover, Rosh Hashanah, and Hanukkah, incidents detailing for the Administrative Defendants the treatment he and the other Jewish prisoners were subjected to by the John Doe officers. [*Id.* ¶ 50.]

B.   **Retaliation Claims**

Plaintiff also alleges that he was subjected to a series of retaliatory actions for assisting fellow prisoners in drafting grievances, letters, and complaints against corrections officers. [*Id.* ¶ 53.] He alleges that after returning from a shower, he witnessed the Retaliation Defendants searching his cell. [*Id.* ¶ 55.] Shortly after they departed, Plaintiff found a "poorly-hidden razor blade" on his desk which was not in his cell before he left to take a shower. [*Id.* ¶ 56.] As Plaintiff discovered the razorblade, one of the Retaliation Defendants returned to charge Plaintiff for unauthorized possession of the razor blade. [*Id.* ¶ 57.]

Plaintiff appeared for a disciplinary hearing on the charges but alleges that he was not provided written notice of the hearing. [*Id.* ¶ 63.] He denied ownership of the razor blade and stated that his cellmate could corroborate his version of events. [*Id.* ¶ 64.] The Retaliation Defendants refused, however, to permit Plaintiff's cellmate to

testify at the hearing. [*Id.*] Plaintiff alleges that "[a]fter being denied any opportunity to present a defense" he was "summarily found guilty and given a punishment of 180 days in administrative segregation" at Northern State Prison in Newark, New Jersey. [*Id.* ¶ 65.]

### C. Excessive Force Claims

When Plaintiff arrived at his Northern State Prison administrative segregation cell, he noticed that it had been freshly pepper-sprayed. [*Id.* ¶ 68.] When Plaintiff informed Northern State Prison John Doe corrections officers (the "NSP Retaliation Defendants") about the condition of the cell, the NSP Retaliation Defendants "simply smiled" and told Plaintiff to "deal with it." [*Id.* ¶ 69.] Plaintiff remained in the unventilated pepper-sprayed cell for more than 12 hours. He alleges no personal involvement on the part of the South Woods State Prison Retaliation Defendants with respect to the pepper-spraying.

### D. Failure to Protect Claims

While serving his administrative segregation sentence at Northern State Prison, Plaintiff alleges that the NSP Retaliation Defendants "in conjunction with the [South Woods State Prison Retaliation Defendants]," purposefully housed a notorious prisoner, "Victor," with him in the same administrative segregation cell. [*Id.* ¶ 71.] Plaintiff alleges that the Retaliation Defendants knew that Victor had previously committed unprovoked acts of physical violence against numerous prisoners he shared cells with and, so, was usually segregated in a special unit. [*Id.* ¶ 72.] Victor would

4

repeatedly make statements reflecting his propensity for violence, including, for example, "vividly detail[ing] torturing and killing the prosecutor that obtained his conviction," expressing his desire to "kill someone" because killing made him "feel good," and musing about killing Plaintiff in his sleep for "fun." [*Id.* ¶¶ 73–74.] Victor physically attacked Plaintiff believing himself to be entitled to Plaintiff's purchased meal. [*Id.* ¶ 75.] Plaintiff's shoulder was severely injured during the attack. [*Id.* ¶ 76.]

## II.   PROCEDURAL BACKGROUND

Plaintiff initially brought this civil rights action *pro se* in the Eastern District of Pennsylvania. [Docket No. 2.] The Eastern District of Pennsylvania transferred the case to this Court which screened his first amended complaint pursuant to 28 U.S.C. § 1915A(b) dismissing it without prejudice. [Docket Nos. 4, 13.] Plaintiff amended his pleading twice more and the Court permitted some of his claims to proceed past the screening stage while dismissing the remainder of his claims. [Docket Nos. 19, 23–24.] Plaintiff filed a motion to appoint pro bono counsel which this Court granted. [Docket Nos. 31, 41.] Plaintiff, through his appointed pro bono counsel, filed the operative Fourth Amended Complaint at issue here. [Docket No. 71.] Defendant Nurse Lisa Mills—who Plaintiff brings medical deliberate indifference claims against—filed an Answer to the Fourth Amended Complaint. [Docket No. 78.]

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint if the plaintiff fails to state a claim upon which relief can be granted. The party seeking dismissal of the complaint must show it fails to state a claim. *Lesher v. Zimmerman*, 822

F. App'x 116, 119 (3d Cir. 2020). When reviewing a motion to dismiss, courts must accept the complaint's factual allegations as true and afford the plaintiff "every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). Courts will dismiss a complaint if the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts will not accept "legal conclusions" as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Malleus*, 641 F.3d at 563.

## IV.   ANALYSIS

### A.   Equal Protection Claims Against the Administrative Defendants (Counts II and XII)

Defendants argue that Plaintiff's equal protection claims against the Administrative Defendants fail because he has not alleged any personal involvement on the part of the Administrative Defendants. Administrative supervisors are not liable under Section 1983 or the NJCRA for the acts of their subordinates. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Wronko v. Howell Twp.*, 2018 WL 516055, at *7 (D.N.J. 2018) ("The NJCRA, like § 1983, does not impose vicarious or respondeat superior liability."). Instead, supervisors can only be held liable under either statute if they were

"involved personally, meaning through personal direction or actual knowledge and acquiescence, in the wrongs alleged." *McKenna v. City of Philadelphia*, 582 F.3d 447, 460 (3d Cir. 2009). Knowledge or acquiescence can be proven either via "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents." *Terranova v. Borough of Hasbrouck Heights*, 2020 WL 526113, at *4 (D.N.J. Jan. 30, 2020) (citing *CM. ex. rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000)).

The parties dispute whether Plaintiff's submission of three prisoner grievance forms to the Administrative Defendants documenting the religious discrimination he and other Jewish prisoners allegedly experienced were sufficient to establish the Administrative Defendants' knowledge of the discrimination. [4AC ¶ 50.] Generally, "a prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right." *Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988); *Hayes v. Gilmore*, 802 F. App'x 84, 87 (3d Cir. 2020) (holding that the denial of prisoner grievances does not establish personal involvement). Some courts have held, however, that administrative review of a prisoner's grievance can establish personal involvement where the plaintiff alleges an ongoing constitutional violation that he made the administrative defendant aware of through the filing of administrative grievances and which the reviewing administrative defendant failed to remedy. *See Gomez v. Dimonte*, 2023 WL 5526807, at *3 (D.N.J. Aug. 28, 2023) (collecting cases and holding that plaintiff stated claim

7

for Eighth Amendment violation where he alleged that defendants failed to provide him with a prescribed special bland diet and put defendants on notice of that failure through filing of administrative grievance forms).

Assuming without deciding that those cases apply, the Court rejects Plaintiff's characterization of the constitutional violations as "ongoing." [Docket No. 106 ("Pl.'s Br.") at 8.] Rather, he alleges three discrete instances of discrimination on Rosh Hashanah, Hanukah, and Passover and that he submitted separately-lodged grievance forms for each of those instances. [4AC ¶¶ 36–50.] And while each instance involves a similar set of circumstances, none of them can be characterized as "ongoing." In *Gomez*, for example, the violation was ongoing because the plaintiff filed numerous grievances in an attempt to receive his medically prescribed diet which he was not receiving at all. *Gomez*, 2023 WL 5526807, at *3; *see also Carter v. Smith*, 2009 WL 3088428, at *6 (E.D. Pa. Sept. 22, 2009) (submission of grievance forms to prison officials adequately stated Eighth Amendment violation because plaintiff filed numerous grievances in an attempt to receive the necessary treatment in the first place). Here, by contrast, each discriminatory event ended before Plaintiff submitted a grievance form. [4AC ¶ 50.] They relate to past, rather than ongoing, harms.

Nor are there other allegations sufficient to support an inference of actual knowledge by the Administrative Defendants. Plaintiff cites *Capps v. Dixon* for the proposition that a "defendant's review of complaints, inquiry forms, or incident reports, along with the failure to take sufficient corrective measures, allow [a] supervisory liability theory to survive [a] motion[] to dismiss." [Pl.'s Br. at 7 (citing

8

*Capps v. Dixon*, 2021 WL 2024998, at \*6 (D.N.J. May 21, 2021)).] But in *Capps*, this Court permitted a Section 1983 claim to proceed against a police chief—Chief Farabella—based only *in part* on complaints he received regarding the defendant officer's uses of excessive force. *Capps*, 2021 WL 2024998, at \*6. Chief Farabella's actual knowledge was not alleged based purely on the complaints against the officer. Rather, the plaintiff in *Capps* alleged that Chief Farabella knew about complaints lodged against the defendant officer for years and that he had even spoken with the officer about those uses of force, ultimately failing to take any corrective measures. *Id*. There are no such allegations here. The Court will dismiss the Administrative Defendants without prejudice.

### B. Retaliation Claims

#### 1. *First Amendment Retaliation (Counts III and XIII)*

Defendants argue that the First Amendment conduct Plaintiff alleges he was retaliated against for—assisting other inmates with their legal filings—is not, in fact, constitutionally protected. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (prisoner alleging retaliation must show constitutionally protected conduct, an adverse action, and a causal link between the two). The Court agrees.

Generally, prisoners cannot sustain a First Amendment retaliation claim based on their providing of legal assistance to other prisoners. *See Shaw v. Murphy*, 532 U.S. 223, 230–32 (2001) (declining to extend constitutional protection to prisoner-to-prisoner legal communications, instead applying the test from *Turner v. Safley*, 482 U.S.

9

78, 89 (1987), under which prisons can limit conduct if the regulation is reasonably related to a legitimate penological interest). The Third Circuit has held, however, that where prisoner-to-prisoner legal assistance "was both pursuant to the plaintiff's job duties at the prison and in accordance with prison regulations, and was not inconsistent with legitimate penological interests, such assistance could fall within the limited First Amendment rights that prisoners retain." *Cooper v. Pennsylvania Dep't of Corr.*, 756 F. App'x 130, 134 (3d Cir. 2018) (quoting *Wisniewski v. Fisher*, 857 F.3d 152, 156–57 (3d Cir. 2017) (cleaned up)).

In *Wisniewski*, for example, the Third Circuit found that the plaintiff could state a First Amendment retaliation claim where he alleged that he was retaliated against for assisting assigned prisoners with filing prison grievances as part of his job duties as the prison law library's "Legal Reference Aide." 857 F.3d at 156–57. The Third Circuit held that Wisniewski's "amended complaint plausibly alleged that his conduct in assisting his assigned inmate prepare a grievance, which was both pursuant to his job duties and in accordance with prison regulations, was not inconsistent with legitimate penological interests, and therefore could fall within the limited First Amendment rights that prisoners retain." *Id.* at 157 (citation omitted).

Conversely, in *Watlington on behalf of FCI Schuylkill African American Inmates v. Reigel*, the Third Circuit held that the prisoner-plaintiff could not state a claim for First Amendment retaliation because even though he "alleged that he was retaliated against for providing legal assistance to other inmates," he did not allege, "unlike in *Wisniewski*, … that he was providing any such assistance pursuant to his job duties in

10

the prison, let alone that he was assigned to assist a particular prisoner with a particular grievance." 723 F. App'x 137, 140 (3d Cir. 2018). Similarly, in *Cooper v. Pennsylvania Dep't of Corrections*, the Third Circuit again looked to the prisoner-plaintiff's job duties in prison to determine whether he prove First Amendment retaliation for providing legal assistance to other prisoners. 756 F. App'x at 134. The Third Circuit vacated the District Court's order granting summary judgment on the plaintiff's retaliation claim based on his legal assistance to another prisoner because "neither the District Court nor the parties had an opportunity to consider whether [plaintiff's] role of 'Block Representative' is similar to an Inmate Legal Reference Aide," as in *Wisniewski*. *Id*.

      This case is more like *Watlington* and *Cooper* than *Wisniewski*. Plaintiff has not alleged that he was assisting other prisoners with their legal grievances as part of his prison job duties. Plaintiff argues that *Watlington* and *Cooper* both overread *Wisniewski* by concluding that a prisoner must have a job duty related to rendering legal assistance to other prisoners in order to be afforded First Amendment protections for that assistance. [Pl.'s Br. at 15.] But Plaintiff cites no case where a court has denied a motion to dismiss a First Amendment retaliation claim based on prisoner-to-prisoner legal assistance unrelated to a prison job or program. The Court is satisfied of the persuasive value of *Watlington* and *Cooper*. So, Plaintiff's First Amendment retaliation claim will be dismissed without prejudice.

      **2.**    *Disciplinary Charge Retaliation (Counts IV and XIV)*

      Defendants also argue that Plaintiff cannot sustain a claim that he was denied due process at his disciplinary hearing on the allegedly fabricated charges in retaliation

for providing legal assistance to fellow prisoners. They contend that under the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), Plaintiff cannot collaterally attack his disciplinary charges without first obtaining favorable termination of those charges.

In the prison context, *Heck* is not a sledgehammer that prevents prisoners from challenging any and all disciplinary infractions. It only bars a prisoner from collaterally attacking a disciplinary infraction affecting the *duration* of his confinement. *See Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)). Where a prisoner alleges that he was subjected to a due process violation leading to sanctions that affected the duration of his confinement, such as the loss of good-time credits or eligibility for parole, *Heck* bars his claim. *Razzoli v. Dir., Bureau of Prisons*, 293 F. App'x 852, 856 n.6 (3d Cir. 2008) ("Any [] challenge to due process in the course of the disciplinary hearing and resulting loss of good time credit will not lie under § 1983."). His only remedy is to pursue habeas relief. *Wilkinson*, 544 U.S. at 78.

Plaintiff's Fourth Amended Complaint does not allege that he was subjected to disciplinary sanctions that affected the duration of his confinement. Instead, he alleges only that his disciplinary hearing lacked due process and resulted in "several forms of unwarranted discipline," including restrictive confinement, denial of exercise, denial of outdoor time, denial of access to a common area, and disadvantages in housing assignments. [4AC ¶¶ 137–38.] But Defendants attach a summary of the disciplinary charges to their Motion which reflects that the discipline imposed on Plaintiff *did* affect the duration of his confinement because Plaintiff was sanctioned with "credit for time

12

served; 180 days of … administrative segregation …; and 180 days loss of commutation time[.]" [*See* Docket No. 98-1 ("Defs.' Br."), Ex. A.]

On a motion to dismiss for failure to state a claim, a district court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (*citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). So, when "matters outside of the pleadings" are presented to and are not excluded by the court on a 12(b)(6) motion, the court must instead convert the motion into one for summary judgment under Federal Rule of Civil Procedure 56, after giving proper notice to the parties. FED. R. CIV. P. 12(d); *In re Rockefeller Ctr. Prop., Inc. Secs. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). "Matters outside of the pleadings" does not include, however, documents "integral to or explicitly relied upon in the complaint." *In re Rockefeller Ctr. Props.*, 184 F.3d at 287 (citations omitted). That includes an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).

Plaintiff's due process and retaliation claims are not based on the document itself. They are based on constitutional violations that occurred during his disciplinary proceedings. So, the Court cannot consider the charge summary document without

13

converting Defendant's Motion to one for summary judgment. The Court hereby provides notice that it will convert this portion of Defendant's Motion to one for summary judgment following limited discovery regarding whether Plaintiff lost commutation time as a disciplinary sanction. *Hyldahl v. Denlinger*, 661 F. App'x 167, 172 (3d Cir. 2016) ("The decision to convert a motion to dismiss to a motion for summary judgment is generally committed to the district court's discretion.") (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 n.11 (3d Cir. 1992)). If he did lose commutation time as a sanction for the disciplinary infraction, "the direct and natural consequence of" prevailing on his retaliation and due process claim "would be a restoration of [commutation time] that by [its] very nature dictate[s] a speedier release." *Razzoli*, F. App'x at 857. That would run afoul of the *Heck* bar.

### C. Excessive Force Claims (Counts VI and XVI)

The Retaliation Defendants argue that they are entitled to qualified immunity on Plaintiff's excessive force claims because there is no law clearly establishing that placing a prisoner in a pepper-sprayed cell for twelve hours is a civil rights violation. [Defs.' Br. at 20.] But there is a much simpler reason that Plaintiff's excessive force claims must be dismissed against the Retaliation Defendants. Plaintiff failed to allege that the Retaliation Defendants were personally involved in pepper-spraying the Northern State Prison administrative segregation cell at all. *See Rode*, 845 F.2d at 1207 ("A defendant in a civil rights action must have personal involvement in the alleged wrongs[.]"). Plaintiff's Fourth Amended Complaint alleges only that, once he arrived at Northern State Prison to complete his term of administrative segregation, the NSP

Defendants, who are defined as unnamed John Does, locked Mr. Caratini in the sealed, peppered-sprayed cell for more than 12 hours. [4AC ¶ 66 (defining John Does 16–25 as "NSP Retaliation Defendants"); *see also id*. ¶¶ 63–70 (alleging no personal involvement on the part of the Retaliation Defendants).][1] And unlike Plaintiff's failure to protect claims, discussed below, Plaintiff did not allege that the NSP Retaliation Defendants, *in conjunction* with the South Woods Retaliation Defendants pepper-sprayed the cell. [*See* 4AC ¶ 71 ("The NSP Retaliation Defendants, *in conjunction with* the SWSP Retaliation Defendants, then purposefully housed a notorious prisoner … with Mr. Caratini in the same administrative segregation cell." (emphasis added)).] So, the Court will grant the Retaliation Defendants' Motion on the excessive force claims.

### D.    Failure to Protect Claims (Counts V and XV)

Because "[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society," prison officials have "a duty to protect prisoners from violence at the hands of other prisoners" under the Eighth Amendment's Cruel and Unusual Punishments Clause. *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994). To state a claim for damages against a prison official for

---

[1] The Fourth Amended Complaint's excessive force counts themselves, [4AC ¶¶ 150–59 (Count XI); 4AC ¶¶ 218–229 (Count XII)], allege the Retaliation Defendants were responsible for pepper-spraying Plaintiff's Northern State Prison administrative segregation cell. But that is inconsistent with the other allegations in the Fourth Amended Complaint, which make clear that it was only the John Doe NSP Defendants who were involved in the pepper-spray incident. [4AC ¶¶ 63–70.] And that makes sense because the Retaliation Defendants were stationed at South Woods prison, not Northern State Prison where the pepper-spray incident occurred.

15

failure to protect from inmate violence, a prisoner must demonstrate that he was "incarcerated under conditions posing a substantial risk of [objectively] serious harm" and that the prison official was deliberately indifferent to that substantial risk of objectively serious harm. *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference means that the prison official actually knew of but disregarded an excessive risk to inmate safety. *See id.* at 833–37.

Plaintiff alleges that the Defendants "purposefully housed" him with Victor, "a notorious prisoner," knowing that Victor "committed unprovoked acts of physical violence against numerous previous cellmates" and was therefore "usually segregated in a special unit." [4AC ¶¶ 71–73.] These allegations are insufficient to survive a motion to dismiss. "[A] prison official's awareness of … violent propensities (or history of violence) of [a] particular inmate[] does not supply an inference of deliberate indifference." *Buckley v. Kowalski*, 2015 WL 179385, at *4 (D.N.J. Jan. 14, 2015) (citation omitted); *Bistrian*, 696 F.3d at 371 (the "risk that an inmate with a history of violence might attack another inmate" is too "speculative" to give rise to an inference of deliberate indifference). The remainder of Plaintiff's allegations are also insufficient. Plaintiff alleges that Victor "frequently made statements to those around him reflecting his propensity for violence" and that he "mused about killing Mr. Caratini in his sleep for 'fun.'" [4AC ¶¶ 73–74.] But he fails to allege that he informed Defendants about these statements or that Defendants were otherwise aware of the threats such that they could be deliberately indifferent. The Court will dismiss the failure to protect claims without prejudice.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be **GRANTED**, in part, **CONVERTED** to summary judgment, in part, and the Fourth Amended Complaint **DISMISSED**, in part. An accompanying Order shall issue.

**January 30, 2025**　　　　　　　　　　　　**s/Renée Marie Bumb**
Date　　　　　　　　　　　　　　　　　　　RENÉE MARIE BUMB
　　　　　　　　　　　　　　　　　　　　　Chief United States District Judge